UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAYMAA I.,

          Plaintiff,

    v.                                            **DECISION AND ORDER**

                                                              20-CV-1779S

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

    1.    Plaintiff Shaymaa I.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed her application with the Social Security Administration on August 15, 2017.  Plaintiff alleged disability beginning on June 1, 2006, due to asthma, obesity, bilateral occipital neuralgia with associated headaches, impingement syndrome and partial rotator cuff tear of the right shoulder, lumbar spondylosis without myelopathy or radiculopathy, and right wrist radial styloid tenosynovitis.  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

    3.    On December 12, 2019, ALJ Stephen Cordovani held a hearing at which Plaintiff—represented by counsel and with an Arabic interpreter—and Vocational

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

Expert Timothy Janikowski appeared and testified.  (R.[2] at 26, 47-71.)  At the time of the hearing, Plaintiff was 41 years old (R. at 38).  She only speaks Arabic and thus is deemed illiterate in English and she has a ninth-grade education due to her language barrier (R. at 26, 38, 32).  She has no past relevant work (R. at 38).

4. The ALJ considered the case *de novo* and, on December 31, 2019, issued a written decision denying Plaintiff's application for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 7, 8.)  Plaintiff filed a response on May 10, 2022, relying upon her prior briefing (Docket No. 10, Pl. Reply Memo. at 2) and contending that Defendant relies upon post-hoc rationalizations (id.), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's December 31, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." <u>Williams *ex rel.* Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  <u>See</u> 20 C.F.R. § 416.920.  The Supreme Court of the United States recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not,

> the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application date of August 15, 2017. (R. at 28, 26.) At Step Two, the

ALJ found that Plaintiff has the following severe impairments: asthma, obesity, bilateral occipital neuralgia with associated headaches, impingement syndrome and partial rotator cuff tear of the right shoulder, lumbar spondylosis without myelopathy or radiculopathy, and right wrist radial styloid tenosynovitis. Id. at 29. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 30.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except Plaintiff can occasionally stoop, bend, kneel, and crouch but never crawl; never climb ladders, ropes or scaffold; never over head reach with the right upper extremity, can have occasional reaching with the right arm and frequent handling right dominant hand; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; must have use of cane during period of ambulation; can carry small files/folders in non-cane hand while ambulating. (R. at 31.)

13. At Step Four, the ALJ found Plaintiff had no past relevant work. (R. at 38; see R. at 55.) At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 39.) The ALJ posed to the Vocational Expert hypotheticals of a claimant like Plaintiff in her age, education, skills, and work experience. The expert found that this hypothetical claimant could perform such jobs as bakery worker conveyor line, counter clerk, and shipping and receiving weigher, all light exertion work. (R. at 39.) Noting that cane use and unilateral aspects of manipulation or reaching are not accommodated in the Dictionary of

Occupational Titles, the expert concluded that the number of jobs which would accommodate these limitations was reduced based upon the expert's professional experience. (R. at 39.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 39-40.)

14. Plaintiff argues that the RFC determination is not supported by substantial evidence for finding that she could perform light exertion work. She contends that the ALJ's general reliance upon her treating orthopedist did not support concluding that Plaintiff was able to work. For the reasons that follow, this argument is unavailing.

15. Under the Social Security standards applicable for Title XVI applications after March 2017 for evaluating medical evidence, the agency considers the persuasiveness of a medical opinion, 20 C.F.R. § 416.920c(a). This is determined by consideration of the supportability and consistency of the opinions as the most important factors, id. § 416.920c(c)(1), (2), (b)(2). The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021)(Carter, Mag. J.) (citing, e.g., 20 C.F.R. § 416.920c(b)). The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive the opinion will be, 20 C.F.R. § 416.920c(c)(2). The ALJ, however, is not required to articulate how each medical opinion is considered, 20 C.F.R. § 416.920c(b)(1).

16. Plaintiff's objections arise from the ALJ's consideration of her treating orthopedist, Dr. Lindsey Clark. Dr. Clark found that Plaintiff was very limited in lifting, carrying, pushing, pulling, bending, and climbing and moderately limited in walking, standing, and sitting (R. at 420).

17.     The ALJ found that this opinion was vague, conclusory, and not in vocationally relevant terms, nevertheless found that it was "somewhat persuasive" because it was generally supported and consistent with the record given Plaintiff's her treatment on her back and right shoulder (R. at 37).  The ALJ also found Dr. Clark's opinion was consistent with the state agency consultant opinions although other opinion evidence was more detailed and supported by the evidence (R. at 37).

18.     Plaintiff objects to the apparent inconsistency in the degree the ALJ relies upon Dr. Clark's opinion (Docket No. 7, Pl. Memo. at 11-16).

19.     Defendant contends that the RFC is supported by substantial evidence (Docket No. 8, Def. Memo. at 9-15) and Plaintiff did not meet her burden of showing the lack of substantial evidence for the RFC (id. at 24).  As for Dr. Clark's opinion, Defendant responds that Plaintiff has not shown that this opinion is inconsistent with the RFC finding because a finding of moderate limitation is consistent with the ability to perform light work (id. at 16).

20.     The ALJ (R. at 36) assessed Dr. Clark's opinion with those of consultative examiners Drs. Brauer and Schwab and relied upon the specific and quantified limitations stated therein (Docket No. 8, Def. Memo. at 17).  Dr. Brauer found that Plaintiff could perform a reduced range of light exertion (R. at 80-83, 36).  Dr. Schwab examined Plaintiff and found that Plaintiff had mild restriction to bending, lifting, and carrying heavy objects, with marked restriction to raising her right arm over shoulder height (R. at 346, 34-35). The ALJ found these opinions either were very persuasive (Dr. Schwab's) or persuasive (Dr. Brauer), noting that these opinions are consistent with each other (R. at 37, 36) as well as with clinical findings and longitudinal treatment records (R. at 37).  These

treatment records show conservative and routine medication treatment and observed that Plaintiff was not a candidate for surgery (R. at 37).

21. Dr. Clark's opinion is in a two-page filled in form where the doctor indicated functional limitations by category (R. at 419-20). Dr. Clark did not provide additional information about the degree of limitation.

22. The ALJ has substantial evidence to give less weight to Dr. Clark's opinion where it exceeded the limitations found by the consultative examiners. The opinions from the consultative examiners were more specific (Docket No. 8, Def. Memo. at 17, 19).

23. Under the March 2017 amended regulations, the ALJ will not defer to or give any specific evidentiary weight to any medical opinion, 20 C.F.R. § 416.920c(a). The ALJ need not mirror a medical source's opinion in finding the RFC (id. at 19). The RFC finding is administrative rather than medical and is within the province of the ALJ, Curry v. Comm'r, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary Order) (id. at 19-20).

24. Thus, this Court denies Plaintiff's Motion for Judgment (Docket No. 7) on this ground.

25. Next, Plaintiff argues that there was no substantial evidence for the ALJ's assessment of her subjective complaints (Docket No. 7, Pl. Memo. at 17-19). She faults the ALJ for relying upon Plaintiff's noncompliance with ongoing treatment and her ability to perform activities of daily living despite her condition (id. at 19).

26. Defendant responds that substantial evidence supports the ALJ finding that Plaintiff's subjective complaints were not fully supported (Docket No. 8, Def. Memo. at 20-22). Defendant argues that the ALJ considered her subjective complaints in limiting her to a reduced range of light work (id. at 20; R. at 32-33).

27. In considering a claimant's subjective complaints, the ALJ must determine if the claimant suffers from a medically determinable impairment that could reasonably be expected to produce symptoms, 20 C.F.R. § 416.929(c)(1) (Docket No. 7, Pl. Memo. at 17).

28. Where objective medical evidence shows that an impairment can reasonably be expected to produce Plaintiff's symptoms, the ALJ must evaluate the intensity and persistence of those symptoms by reviewing the objective medical evidence, 20 C.F.R. § 416.929(c)(1)-(2) (Docket No. 8, Def. Memo. at 20).

29. The ALJ need not accept Plaintiff's subjective complaints without question, Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (see Docket No. 7, Pl. Memo. at 18).

30. Plaintiff testified that her biggest physical issue is her back pain (R. at 62). From Plaintiff's medical records and her activities of daily living and her frequent bending (R. at 948, 33) Plaintiff reported that she showered, bathed, cooked, performed childcare and housework, and grocery shopped (R. at 948, 201-05; see Docket No. 8, Def. Memo. at 21) with the doctor noting on April 7, 2017, that these activities exacerbated her back pain (R. at 948).

31. Plaintiff, however, reported that she barely cleaned her house and performed only simple activities, with her daughters assisting her clean the house, wash dishes, and do laundry (R. at 201-02, 203-04). Plaintiff testified that her children assisted her in performing household chores because she suffered increasing back pain with activity (R. at 52, 57, 62, 64, 463, 467; see Docket No. 7, Pl. Memo. at 6, 19). She stated she needed assistance bathing because she could not lift her right hand (R. at 202). As for her cooking, Plaintiff reported that her daughter usually cooked because of Plaintiff's

shoulder, back, and wrist pain (R. at 203), later testifying that her daughters assisted (R. at 57).

32. Dr. Edward Simmons who examined Plaintiff on April 7, 2017, noted that there was "very minimal pathology in the form of disc bulging" while MRI of her lumbar spine did not indicate the need for surgery (R. at 951). Plaintiff underwent conservative treatment for her back during the relevant period (R. at 33-34, 951), although she contends now that she may require surgery in the future (Docket No. 7, Pl. Memo. at 19; see at R. at 951). Dr. Simmons opined that Plaintiff's thoracic spinal pathology could be considered for surgery in the future "should her pain continue to be severe and intractable in a daily basis and refractory to all conservative treatment" but Plaintiff had "not yet exhausted all her conservative treatment options" (R. at 951).

33. Here, the objective medical evidence shows that Plaintiff has not suffered disabling back pain. The ALJ had sufficient evidence to conclude that Plaintiff was not disabled during the relevant claimed period despite whatever her future condition might be. Thus, this Court also denies Plaintiff's Motion for Judgment (Docket No. 7) on this ground.

34. Finally, Plaintiff asserts that the ALJ found her migraines were a severe impairment but the RFC did not include reference to migraines (Docket No. 7, Pl. Memo. at 19-22). She claims that the Vocational Expert was not asked about absenteeism despite Plaintiff having to take two days off if she worked ten to fourteen days straight (id. at 20).

35. Defendant counters that the RFC accounts for Plaintiff's headaches (Docket No. 8, Def. Memo. at 22-23), concluding that additional postural limitations also

accommodate Plaintiff's occipital neuralgia, or sharp nerve pain involve upper cervical nerves, Taber's Cyclopedic Medical Dictionary at 1199 (16th ill. Ed. 1989) (see R. at 35). Plaintiff was treated conservatively magnesium oxide and vitamin B2 and being administered nerve blocks (R. at 35).  The ALJ found that Plaintiff, however, was not diagnosed with migraines without auras (R. at 35, citing R. at 630, 975)  but Dr. Shivang Joshi on January 14, 2019, did find that Plaintiff did meet the diagnostic criteria for episodic migraine without aura, prescribing magnesium oxide and vitamin B2 (R. at 630, 975).  Defendant denies that her headaches would cause Plaintiff to miss work, especially after receiving nerve block injections which prevented future headaches (Docket No. 8, Def. Memo. at 8).

36. Plaintiff, however, denies the record reported any significant change in her migraines following treatment (Docket No. 7, Pl. Memo. at 20).

37. While the ALJ erred in Plaintiff's diagnosis of episodic migraines, Plaintiff's prescribed treatment was conservative and did not indicate that symptoms-imposed limitations on Plaintiff's performance.

38. Plaintiff complained to Dr. Shivang Joshi on January 14, 2019, during his consultation that she suffered one headache per month that lasted ten days (R. at 628; see Docket No. 7, Pl. Memo. at 20; Docket No. 8, Def. Memo. at 23).  Dr. Joshi treated Plaintiff on January 18, 2019, with nerve block injections  (R. at 963-64), observing in October 2019 that this treatment "has been helping" and Plaintiff did not have any significant headaches (R. at 971, notes from Oct. 7, 2019).

39. The ALJ again had objective medical evidence that the nerve block treatment has addressed Plaintiff's headaches.

40. Therefore, this Court also denies Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) on this ground.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:    June 26, 2023
          Buffalo, New York

                                            s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge